National Live Stock Ins. Co. *v.* Elliott—60 Ind. App. 112.

force a mechanic's lien for the value of the stairs. Had his contract included the putting of the stairs in place and their attachment to the building, we believe that he could have been called a contractor, but that is not the case.

We think that appellant occupies the position merely of a materialman furnishing material to a materialman, and not of a subcontractor, or of a materialman furnishing materials to a contractor. We see no reason to depart from the holding in *Caulfield* v. *Polk, supra,* that a materialman furnishing material to another materialman has no right to a mechanic's lien, for we believe that holding supported both by reason and the weight of authority. See, *Hightower* v. *Bailey* (1900), 108 Ky. 198, 56 S. W. 147, 94 Am. St. 350, 49 L. R. A. 255; 27 Cyc 100 and cases cited; Phillips, Mechanics' Liens (3d ed.) §51. Judgment affirmed.

NOTE.—Reported in 108 N. E. 16. Lien of materialmen, see 79 Am. Dec. 268. On the right of a subcontractor to protection of statutes giving liens to "laborers," "mechanics," "workmen," and the like, see 30 L. R. A. (N. S.) 85. Necessity that materials for which mechanic's lien is claimed be incorporated in structure, see 13 Ann. Cas. 13; 19 Ann. Cas. 588; Ann. Cas. 1913 B 502. See, also, 27 Cyc 100.

---

NATIONAL LIVE STOCK INSURANCE COMPANY *v.* ELLIOTT.

[No. 8,573. Filed May 7, 1915. Rehearing denied October 6, 1915. Transfer denied November 17, 1915.]

1. INSURANCE.—*Live Stock Insurance.—Expediting Death of Animal.—Liability.*—Where plaintiff's mare in the foaling of a colt was so badly torn and mangled that she suffered great pain and was in a dying condition, and there was no possibility of recovery, the act of the veterinary surgeon in expediting her death by a blow on the head did not relieve defendant from liability under a policy covering loss by death from foaling. p. 114.

2. INSURANCE.—*Live Stock Insurance.—Death of Animal.—Official Acts.—Liability.*—Defendant was liable for the death of a mare

covered by a policy providing that no liability should attach for death caused by the authority or direction of an officer or person claiming to act under and by virtue of any law, where, on finding the mare to be suffering and in a dying condition beyond the possibility of recovery, the veterinary in charge, who was also an officer of the law, expedited her death by a blow on the head, in the absence of anything to show that he was acting in his official capacity rather than in the performance of his duty as a veterinary.   p. 116.

3.   INSURANCE.—*Live Stock Insurance.—Action on Policy.—Interrogation of Party Before Trial.—Conclusiveness of Answer.*—In an action on a policy of live stock insurance exempting the company from liability for death of an animal pursuant to official authority or direction, plaintiff's answer to an interrogatory propounded before trial, that the animal was killed by an officer of the law, was not conclusive and was subject to contradiction by evidence showing that the officer did not act in an official capacity and that what he did was merely to expedite the death of the animal whose condition was already beyond the possibility of recovery.   p. 116.

4.   INSURANCE.—*Live Stock Insurance.—Notice of Illness.*—Under a policy of live stock insurance requiring notice to the company in case of illness of the animal insured, the owner of the animal has a reasonable time within which to give such notice, and where the facts are disputed the question of what constitutes a reasonable time is for the jury; hence where plaintiff's mare in foaling was so badly torn and mangled that she was beyond the possibility of recovery and was suffering intensely, so that humane treatment required the immediate expediting of death, the court can not say that the failure to notify the company of the animal's illness was unreasonable.   p. 116.

5.   INSURANCE.—*Live Stock Insurance.—Defenses.—Waiver.*—Where a live stock insurance company, with knowledge of all the facts respecting the death of the animal insured, rejected the claim after proof of loss solely upon the ground that the animal had been killed by an officer of the law, it thereby waived all other grounds of defense, including the plaintiff's failure to give notice of the animal's illness.   p. 117.

From Bartholomew Circuit Court; *Hugh Wickens*, Judge.

Action by Charles J. Elliott against the National Live Stock Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Mitchel S. Meyberg*, for appellant.
*Kohlmeyer & Sharpnack*, for appellee.

VOL. 60—8

SHEA, J.—This was an action by appellee before a justice of the peace to recover against appellant on a policy of insurance in the sum of $125, issued by appellant to indemnify appellee against loss by death of a certain mare, from foaling. Judgment was rendered against appellant by said justice, from which an appeal was taken to the Bartholomew Circuit Court. Appellee's complaint is predicated upon the theory that the animal insured died of foaling, and that the loss was one indemnified against by the contract or policy of insurance. Appellant denied this, and claimed the animal died from the effects of a blow upon its head with an ax. Appellant further denied that appellee had performed his part of the contract.

The cause was tried by jury. Verdict and judgment for appellee for $128.70. The only error assigned is the action of the court in overruling the motion for a new trial. The causes assigned therefor are, (1) the verdict of the jury is not sustained by sufficient evidence, (2) the verdict of the jury is contrary to law.

In support of its contention appellant argues first that the mare insured did not die from foaling, but that death was caused by a blow on the head, inflicted by the veterinary surgeon, who was in attendance. The veterinary surgeon testified that the animal was torn up in such condition that she could not get up, and in fact could not live; that there was no chance for her at all, and that she died from foaling. He described the condition of the animal in the following language: "Her intestines were on the ground and they were torn into. This colt's feet went through the intestines and there they laid in a bunch and she had flooded until she was very weak. We tried to get her up and could not. She was worn out. It was hot and she

was lying in the sun and was sweating; we could not get her up and there she laid. I did all I could do. The colt was deformed and dead, and had been dead for some time. Everything was out; her intestines were torn into. We could not do anything and we had to give it up. She was dying. * * * she was dying from flooding. She was bleeding to death, and suffering great pain. She was sweating and in great misery there in the sun;" that he telephoned the company and wrote them what he did and all about it; that intestines can sometimes be fixed, but it could not have been done in this case. He tried to get the animal to stand because he wanted to do everything he could, but when he had exhausted every effort in his power, and found there was no possibility of the animal living, he hit her with an ax between the eyes to end her suffering; that she was in a dying condition anyway, and would not have lived longer than an hour or two. This evidence is undisputed. The animal was in a suffering, dying condition, and there was no possibility of recovery. Under such circumstances every instinct of humanity dictated that the veterinary surgeon and the owner of the animal should do exactly what they did, end the suffering. It is idle to say under such circumstances that the death was not caused from foaling insured against in the policy. The foaling brought about the dying, suffering condition. The act of the veterinary surgeon and owner was but humane, and to be commended rather than condemned, as the facts are here shown. This question has recently been decided by this court adversely to appellant's contention. *Live Stock Ins. Assn.* v. *Edgar* (1914), 56 Ind. App. 489, 105 N. E. 641.

It is further argued that the animal was killed by an officer of the law, and therefore there could

be no recovery, as the policy contains the following language: "This company will not be liable * * * for the death of any animal which is caused by the authority or direction of any State or government officer, or other officer or of any person claiming to act under and by virtue of any law." Prior to the trial appellant propounded to appellee various interrogatories, among which was the following: "Q. Was this party (veterinary surgeon) an officer of the law, or any person claiming to act under the law? A. Yes." Upon the basis of this clause of the policy, and interrogatory, appellant contends there can be no recovery. There is no merit in this contention. It is not disclosed what official position the veterinary surgeon held, and it is clear that he was not acting in an official capacity when he performed the act complained of, but was rather performing his duty as a veterinary surgeon prompted by the instincts of humanity, in order that the pain and suffering might be relieved. It is argued that because appellee, in answer to an interrogatory, stated the animal was killed by an officer of the law, that such statements can not be contradicted by the evidence, and are conclusive. Repeated holdings of this court are to the contrary. *Travelers Ins. Co.* v. *Nitterhouse* (1894), 11 Ind. App. 155, 38 N. E. 1110; *Hodson* v. *Great Camp, etc.* (1911), 47 Ind. App. 113, 93 N. E. 861.

It is further insisted that there can be no recovery in this case because notice of the sickness of the animal was not given. We doubt whether foaling is such sickness as required notice under the terms of the policy, unless prolonged illness should result therefrom, which is not borne out by the facts here. In any case, appellee has reasonable time within which to give notice of

sickness. Where the facts are in dispute, what is a reasonable time is a question of fact for the jury. *Pickel* v. *Phoenix Ins. Co.* (1889), 119 Ind. 291, 21 N. E. 898; *Metropolitan Life Ins. Co* v. *Frankel* (1915), 58 Ind. App. 115, 103 N. E. 501; 2 Bacon, Ben. Soc. and Life Ins. §405. We can not say in this case that the failure to give notice of the animal's sickness under the circumstances was unreasonable.

In rejecting the claim after proof of loss, appellant did not rest its refusal to pay upon the ground of failure to give notice, but solely upon the ground that the animal had been killed by an officer of the law. This was a waiver of any claim of defense upon other and different grounds. The evidence of the veterinary surgeon shows that appellant had knowledge of the facts respecting the death of the animal. In the absence of facts explaining or excusing the failure of appellant to make the claim of death by striking with an ax, that claim is waived, and the defense must rest upon the ground assigned. The principle is upheld in our own courts, as well as in many other jurisdictions. *Fort Wayne Ins. Co.* v. *Irwin* (1899), 23 Ind. App. 53, 54 N. E. 817; *Indiana, etc., Life Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 15, 101 N. E. 289, 45 L: R. A. (N. S.) 192; *Western, etc., Pipe Line Co.* v. *Home Ins. Co.* (1891), 145 Pa. St. 346, 22 Atl. 665, 27 Am. St. 703; *Smith* v. *German Ins. Co.* (1895), 107 Mich. 270, 65 N. W. 236, 30 L. R. A. 368; *Douville* v. *Farmer's Mut. Fire Ins. Co.* (1897), 113 Mich. 158, 71 N. W. 517; *Home Life Ins. Co.* v. *Pierce* (1874), 75 Ill. 426; *Cahill* v. *Andes Ins. Co.* (1872) 5 Biss. 211, Fed. Cas. No. 2289.

The case of *Head* v. *National Live Stock Ins. Co.* (1914), decided by the court of civil appeals of Tennessee, on November 14, 1914, cited and relied on

by appellant, is easily distinguishable in its facts from the case at bar. In that case appellant's mule became lame on Thursday, and did not die until the following Monday. Plenty of time elapsed within which the owner could have notified the company of the condition of the animal. This was not done because the owner did not think the condition was serious. The court very properly held in this case that there was a failure to comply with the terms of the policy, which provided for notice forthwith by telephone or telegram, of any accident that might happen to the animal.

The case of *Tripp* v. *Northwestern Live Stock Ins. Co.* (1894), 91 Iowa 278, 59 N. W. 1, is likewise distinguishable, because the horse in that case was killed by the veterinary surgeon two hours before the policy expired, not because the animal was suffering pain, but because it was believed to be impossible for the animal to recover, so that the humane doctrine which we think is rightly invoked in the case at bar had no application to that case.

We find no reversible error in the record. Judgment affirmed.

NOTE.—Reported in 108 N. E. 784. On the questions coming under policy of animal insurance, see 44 L. R. A. (N. S.) 569; Ann. Cas. 1915 A 614. See, also, under (1) 25 Cyc 1520; (3) 16 Cyc 1045; (4) 25 Cyc 1519.